(Pleito No. 162.—Fallado en Diciembre 2, 1901.)

## ESTAPÉ contra ROCAFORT.

RECURSO contra sentencia dictada por la Corte de Distrito de Ponce.

CONTRATO DE SOCIEDAD,—Una compañía de comercio puede constituirse sin que el contrato conste en escritura pública ó inscrito en el Registro Mercantil, bastando que aparezca celebrado con los requisitos esenciales del derecho, para que surta efecto y sea válido y obligatorio respecto de los socios.

### SENTENCIA.

En la Ciudad de San Juan de Puerto Rico, á dos de Diciembre de mil novecientos uno, en los autos de pleito ordinario de mayor cuantía seguidos en el Tribunal del Distrito de Ponce por Don Juan Rocafort y Ramos, comerciante y vecino de aquella Ciudad, contra Don Juan Estapé y Garriga, del mismo vecindario, sobre resolución de un contrato de sociedad é indemnización de daños y perjuicios,

autos pendientes ante Nos por virtud de recurso de casación, por infracción de ley, interpuesto por el demandado, cuya representación ha llevado ante este Tribunal Supremo el Abogado Don Herminio Díaz Navarro; siendo representada la parte demandante, como recurrida, por el Abogado Don José de Guzmán Benítez.—Resultando: Que interpuesta el veinte de Junio del año próximo pasado, demanda ordinaria de mayor cuantía por Don Juan Rocafort comerciante y vecino de Ponce, ante el Tribunal del Distrito de dicha Ciudad, contra Don Juan Estapé y Garriga, para que se le condenase á pagarle dos mil quinientos pesos, ó la mayor suma que acreditara el demandante en concepto de indemnización de daños y perjuicios é intereses, por la resolución que había hecho del contrato de sociedad, que con el actor había llevado para la explotación de un café-restaurant denominado "El Suizo", establecido en la Playa de aquella Ciudad, y se le condenara en las costas, se confirió traslado al demandado Don Juan Estapé, que lo evacuó oponiéndose, y pidiendo por otrosí, que en atención á no haber solicitado el demandante en su escrito de demanda el recibimiento á prueba, y no interesándole tampoco á él, se señalara desde luego día para la celebración de la vista pública, á lo que se accedió por auto de diez y siete de Julio siguiente; y que habiendo pedido reposición de este provisto el demandante Don Juan Rocafort, solicitando por otrosí que en el caso de no accederse á la reforma propuesta, se le tuviera por desistido de la prosecución del pleito, á reserva de establecerlo de nuevo, á cuyo efecto se le facilitaran los autos, por provisto de nueve de Agosto se declaró no·haber lugar á la reforma solicitada por Rocafort, y se le tuvo por desistido y apartado de la prosecución del pleito, á su perjuicio y con las costas.—Resultando: Que notificado á las partes el auto anterior el catorce del mismo mes de Agosto, al día siguiente, quince, dió cuenta el Secretario, llamando la atención del Tribunal, sobre que no se había provisto á lo solicitado por el Abogado del actor,

sobre devolución de un documento que había presentado solicitando el embargo preventivo de los bienes del demandado Don Juan Estapé, por lo que decretó el Tribunal, por providencia del diez y ocho del mismo mes de Agosto, que se devolviera el documento que se interesaba, dejando la oportuna constancia, y se entregaran los autos al recurrente para lo que solicitaba en el otrosí de su anterior escrito, es decir, para la interposición de la nueva demanda.—Resultando: Que notificada esta providencia á las partes, el veinte y veinte y dos de Agosto, respectivamente, sin que contra ella se interpusiera ningún recurso, entregaron los autos á Don Juan Rocafort, que los devolvió, y en veinte y siete del mismo mes de Agosto presentó la nueva demanda origen de este pleito, reproduciendo los mismos fundamentos de hecho y de derecho de la anterior, y exponiendo que en dos de Enero del mismo año el Don Juan Estapé se había dado de alta en la matrícula de industria y comercio en concepto de dueño de un café-restaurant denominado "El Suizo", situado en la playa de aquella Ciudad; que entre el Don Juan Estapé, su hijo Don Pedro, Don Gerardo Millet y el demandante, se había convenido la constitución de una sociedad mercantil para la explotación de dicho café-restaurant, reconociéndose al primero como socio capitalista, y á los otros tres como industriales, con derecho, cada uno de éstos, á la tercera parte de los beneficios, quedando á cargo del Rocafort la dirección de los negocios y autorizados todos á usar la firma "J. Estapé"; siendo pacto que el que se separara de la sociedad antes de un año, sólo percibiría un peso cincuenta centavos diarios desde la fecha en que se abrió el establecimiento, y que no se pasaría balance antes de finalizar el año, á menos que así lo dispusiera el socio capitalista; que por haberlo dejado de un día para otro, no llegó á firmarse el ejemplar del contrato extendido de puño y letra de Don Juan Estapé, dándose comienzo, sin embargo, al tráfico del establecimiento, en la forma convenida; que Don Gerardo Millet se separó voluntariamente de la socie-

dad al poco tiempo, y quedaron Estapé hijo y el demandante Rocafort, con el mismo carácter de socios industriales de Don Juan Estapé, con derecho cada uno de los primeros, á la mitad de los beneficios; que á esa sociedad había venido el Rocafort, rogado por Don Juan Estapé, para aleccionar en los negocios á su hijo y al otro joven Millet, habiendo tenido que abandonar con ese motivo una agencia general que tenía abierta al público, y por la cual pagaba la contribución correspondiente, así como también la agencia especial de la fábrica de chocolate de los Sres. Franco y Cª, de Mayagüez, que le daban el quince por ciento sobre las ventas, pudiendo estimar, sin exageración, que entre ambos negocios obtenía un beneficio mensual que no bajaba de doscientos cincuenta pesos, siendo de advertir, que desde un mes antes de la apertura del establecimiento "El Suizo," había tenido que ocuparse exclusivamente de los preparativos necesarios para ella; que un día del mes de Junio Don Juan Estapé dispuso pasar balance, y lo ultimó, sin conocimiento del demandante, y sin incluir en él las partidas de la libreta de caja que, así como la llave de ésta, se hallaban á cargo de Don Pedro Estapé, y sin dar conocimiento al demandante del resultado del balance, se limitó Don Juan Estapé á dirigirle una carta en la que consignaba como causa que lo determinara á pasarlo, la de que se hubiera tomado dinero sin haberle dado aviso previo, en casa de los Sres. Armstrong, hecho que luego había imputado especial y falsamente al actor, en carta dirigida á su señor suegro; que no conviniéndole hacerse cargo del establecimiento en los términos que se lo había propuesto Estapé en la primera de dichas cartas, ó sea pagando de contado una tercera parte, y el resto á seis meses plazo, con garantía é intereses del nueve por ciento; y sobre todo, no permitiéndole su honor consentir la calumnia vertida por Estapé, al asegurar que el demandante había tomado sin su anuencia, trescientos ochenta pesos en casa de los Sres. Armstrong, ni consentir el supuesto inconcebible de

que en cinco meses se hubieran perdido dos mil quinientos cuarenta y nueve pesos, cuando tenía la seguridad de que se habían obtenido ganancias, aunque moderadas, trató de llegar á una conciliación razonable con el Sr. Estapé, padre, proponiéndole como base, la comprobación de la persona que hubiera tomado aquella suma, y la rectificación del balance, al efecto de incluir las partidas de la libreta de caja, pero que Don Juan Estapé no se había avenido á tan equitativas proposiciones, despidiéndolo de la casa y constituyendo al demandante en una gravísima situación, así como á su pobre familia, traspasando el establecimiento á la merced del inexperto Don Pedro, su hijo, cajero que no había rendido nunca cuenta de las entradas y salidas de la caja; qué, á pesar de sus buenos deseos, había venido á ser imposible su permanencia en la sociedad, por actos inconvenientes y aun punibles del Don Juan Estapé; y alegando como fundamentos de derecho: que la validez del cumplimiento de los contratos no puede dejarse al arbitrio de uno de los contratantes; que los contratos son obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez; que la sociedad civil, á que no se aportan bienes inmuebles ni derechos reales, se puede constituir en cualquiera forma, y es válida y obligatoria entre los contratantes; que deben hacerse constar por escrito, aunque sea privado, los contratos en que la cuantía de las prestaciones de uno ó de los dos contratantes, exceda de mil quinientas pesetas, y los contratantes pueden compelerse recíprocamente á llenar esa forma; que el socio nombrado administrador en el contrato social, puede ejercer todos los actos administrativos, sin embargo de la oposición de sus compañeros, á no ser que proceda de mala fe, y su poder es irrevocable sin causa legítima; que la sociedad sin plazo fijo ni fijable, por la naturaleza de la especulación á que se destina, se entiende de por vida; la renuncia á ella debe ser hecha de buena fe, en tiempo oportuno, y ponerse en conocimiento de los otros socios; que es

de mala fe, cuando el que la hace se propone apropiarse el provecho que debía ser común; que el socio que por su voluntad se separa ó promueve la disolución de la sociedad, no puede impedir la conclusión de los negocios pendientes del modo más conveniente á los intereses comunes, y hasta que no se terminen, no se procederá á dividir bienes ni efectos; que las pérdidas se imputarán entre los socios capitalistas, sin comprender á los industriales que no se hubiesen constituído partícipes de ellas por pacto expreso; que en las obligaciones recíprocas, desde que uno de los obligados cumple su obligación, empieza la mora para el otro; y quedan sujetos á la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurriesen en dolo, negligencia ó morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas; que la indemnización de daños y perjuicios comprende no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor; que la facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliese lo que le incumbe; que el perjudicado podrá escoger entre exigir el cumplimiento, ó la resolución de la obligación con el resarcimiento de daños y abono de intereses, en ambos casos; que también podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible; é invocando en apoyo de sus pretensiones los artículos 1,256, 1,278, 1,280, 1,279, 1,692, 1,680, 1,705, 1,706, 1,100, 1,101, 1,106 y 1,124 del Código Civil, y 117, 131, 225 y 114 del Código de Comercio, concluyó solicitando se condenara en su día á Don Juan Estapé y Garriga á que le indemnizara los daños y perjuicios y le abonara los intereses respectivos, cuyo importe estimaba para los efectos de la competencia, en una suma muy superior á cuatrocientos dollars, por la resolución que había hecho del contrato de sociedad que con el actor tenía establecido, imponiéndole, además, todas las costas.—Resultando: Que conferido traslado de

dicha demanda á Don Juan Estapé y Garriga, lo evacuó por conducto y bajo la representación del Abogado Don Luis Llorens Torres, oponiéndose y alegando á su vez, que el convenio sobre constitución de la sociedad á que se refería Don Juan Rocafort, no había pasado de la categoría de proyecto, que no llegó á realizarse por suerte, ni habría podido llevarse á término en la forma que se relacionaba, porque de constituirse la sociedad, tendría necesariamente que basarse y regirse por las leyes que regulan dicho contrato; que Don Gerardo Millet se separó voluntariamente del establecimiento, en vista de que no podía constituirse la sociedad proyectada, por lo mismo de que el Sr. Rocafort estaba incapacitado para ejercer el comercio, toda vez que tenía en Mayagüez una suspensión de pagos pendiente, y próximo á ser declarado en quiebra, á instancia de cualquiera de sus acreedores, no siendo cierto por lo tanto que hubiese adquirido el carácter de socio, como quería suponer, ni menos con derecho á la mitad de los beneficios; que es completamente falso lo que consigna el demandante Rocafort en el hecho 4º de su demanda, porque no se deja con tanta facilidad un beneficio mensual de doscientos cincuenta pesos por otro incierto y eventual; que las notas del balance están escritas de puño y letra del Sr. Rocafort, así como muchas de las partidas de la libreta de caja; y es de suponerse que pretenda no conocer el resultado desastroso de aquellas operaciones, porque figura como deudor al establecimiento por cuatrocientos sesenta y seis pesos cincuenta centavos, cuya cantidad no había tenido derecho á tomar, máxime, teniendo como tenía asegurada la manutención y casa para él y su familia; y como fundamentos de derecho, que la sociedad es un contrato por el cual dos ó más personas se obligan á poner en común su dinero, bienes ó industrias, con ánimo de partir entre sí las ganancias; que debe tener un objeto lícito, y establecerse en interés común de los socios, lo que no sucedía en el que expresaba Rocafort, pues el socio capitalista Don Juan Estapé no tenía parti-

cipación en las ganancias, por lo que de haber existido dicho contrato de sociedad, debía reputarse nulo ; que tratándose de compañías mercantiles, el Código de Comercio, ordena que deben regirse por las cláusulas y condiciones establecidas en sus respectivos contratos, que deben constar en escrituras públicas, inscritas en el Registro mercantil, y en cuanto en ellas no esté determinado y prescrito, se regirán por las disposiciones del propio Código ; que se reputan comerciantes los que teniendo capacidad legal para ejercer el comercio, se dedican á él habitualmente, y para tener capacidad es indispensable que se tenga, entre otras cosas, la libre disposición de sus bienes, y que careciendo como carece Don Juan Rocafort de esa capacidad legal por la razón que se deja consignada, no tiene personalidad para comparecer en juicio, por no estar en el pleno ejercicio de sus derechos civiles ; que las compañías en comandita deben constituirse en la misma forma que las colectivas y girar bajo el nombre de todos los socios colectivos, de algunos de ellos, ó de uno solo, pero que nunca podrá incluirse en la razón social el nombre del socio ó socios comanditarios ; de manera que no habiéndose sujetado á ninguna de estas disposiciones la sociedad· tan decantada por el Sr. Rocafort, es claro y evidente que no había llegado á existir, por no haberse constituído en debida forma ; é invocando á su vez, en apoyo de sus excepciones los artículos 1,665, 1,666 y 1,695 del Código Civil, 1º, 4º, 116, 125 y 145 y siguientes del Código de Comercio, y 2 y 532 de la Ley de Enjuiciamiento Civil, concluyó pidiendo se declarase en su día sin lugar la demanda, absolviendo de ella á Don Juan Estapé, con las costas al demandante ; y alegando además por otrosies, las excepciones de cosa juzgada y defecto legal en el modo de interponer la demanda, fundando la primera en que habiendo desistido Don Juan Rocafort de la anterior demanda, entre la cual y la que después se interponía había una entidad absoluta de personas, cosas y acciones, ese desistimiento debía equipararse á la cosa juzgada y atribuir-

seles los mismos efectos legales; y la segunda, porque no determinándose en la demanda la cantidad fija que se reclamaba, como lo previene el artículo 523 de la Ley de Enjuiciamiento Civil al prescribir que en la demanda se fije con claridad y precisión lo que se pide, era procedente también la excepción alegada, á tenor de lo que previene el artículo 532 de la misma ley de trámites, según la que procede la excepción dilatoria de defecto en el modo de proponer la demanda, cuando en ésta no se llenan los requisitos que exige el citado artículo 523 de la Ley procesal.—Resultando: Que abierto el juicio á pruebas, y admitidas todas las propuestas por ambas partes, á excepción de un paquete de papeles rotos que presentó la defensa de Don Juan Estapé, y no le fué admitida, se trajeron por la representación del actor, y se agregaron á los autos, el documento privado de foja 35, que contiene las bases del contrato de sociedad del café-restaurant de la Playa, bajo las siguientes cláusulas: Que el capital que existía en la casa y que aparecía de los libros, era de Don Juan Estapé y los beneficios que se obtuvieran serían repartidos por terceras partes, entre Don Juan Rocafort, Pedro Estapé y Gerardo Millet; que la marcha de los negocios de la casa tenía que ser bajo la dirección del Sr. Rocafort, que todos firmarían por "J. Estapé"; que en el caso de separarse cualquiera de los expresados señores, Rocafort, Estapé (hijo) ó Millet, antes del año de estar trabajando, no tendrían más derecho que á doce reales diarios, desde el día que se abrió el establecimiento; y que no se pasaría balance por ningún concepto, hasta el fin del año, á menos que Don Juan Estapé dispusiera otra cosa; la esquela del folio 36, dirigida por Estapé á Rocafort, en la que le manifestaba que pensaba ir á la Playa para indicarle si había ya puesto al corriente á los dos jóvenes de lo escrito, y para formalizarlo de una vez, y le da instrucciones respecto de los servicios y lugar que cada uno debía ocupar en el establecimiento; la tarjeta del folio 38, dirigida también por Estapé á Rocafort, recomendándole arreglara con su hijo Pedro

lo que debía entregarse á Gerardo por los tres meses que
había servido en la casa, sin perjuicio para nadie; la carta
del folio 39, dirigida por Estapé á Rocafort en ocho de
Junio de mil novecientos, en la que le manifestaba, que
habiéndole disgustado muy mucho el que se tomara sin su
aviso previo, dinero en casa de los Sres. Armstrong, fué el
motivo que lo determinó á pasar un balance de todo, y como
amigo decirle que si por dicho balance quería hacerse cargo
del establecimiento le daría la preferencia á su hijo, hacién-
dose cargo de todas las cuentas y á pagar una tercera parte
de contado y el resto á seis meses plazos, con intereses del
nueve por ciento, con una garantía que fuera aceptable; y
que si á él no le convenía, su hijo tendría que hacerse cargo
del establecimiento, á cuyo fin se lo había pasado á su nom-
bre; otra carta dirigida por el mismo Estapé á Don M. Ro-
sich el siguiente día, nueve de Junio, al folio 40, en la que
le dice sentiría que dicha carta no le fuera agradable, pero
que habiendo tomado el Sr. Rocafort, sin previo aviso ni
consentimiento suyo, trescientos ochenta pesos en la casa de
los Sres. Armstrong, se había visto en la necesidad de pasar un
balance, el que le acompañaba, para lo que examinara y viera
que en cinco meses había perdido dos mil quinientos cuarenta
y nueve pesos, habiendo vendido mucho y bien, por cuyo
motivo había determinado no continuar más en el negocio del
café, ofreciéndole á Rocafort el establecimiento en venta, por
el valor que arrojaba el balance, y que de no convenirle,
continuaría su hijo solo frente de él; el contrato de arrenda-
miento de casa, folio 41, celebrado entre Don Ramón Cortada
y Don Juan Estapé; copia de una cédula de notificación
hecha á Estapé para el pago de la patente de licores, folio
43; un recibo talonario de la contribución industrial im-
puesta á Rocafort por agencias de negocios, folio 44; dos fac-
turas de la casa Franco y Cª, de Mayagüez, de fechas veinte
y ocho de Septiembre y veinte y seis de Octubre del año
próximo pasado, en las que consta el quince por ciento de
descuento hecho á Rocafort en el precio del chocolate, folio

45; dos cartas de Franco á Rocafort de fechas veinte y cuatro de Julio y ocho de Septiembre del año mil ochocientos noventa y nueve; tres impresos litográficos para el menú del restaurant "El Suizo" de Estapé y Cª, á fojas 77, 78 y 79; y por último, los autos del juicio declarativo que promoviera Don Juan Rocafort contra Don Juan Estapé, sobre indemnización de daños y perjuicios y abono de intereses, por resolución del contrato de sociedad, que Rocafort había desistido de continuarlo y que obran agregados á los autos en cuerda floja.—Resultando :   Que en el acto del juicio oral presentó el abogado representante del actor otros varios documentos que le fueron admitidos y agregados, de folios 143 á 179 vuelto, desestimándose. después de discutida, la excepción dilatoria alegada en su escrito de contestación por el abogado defensor del demandado, de defecto legal en el modo de proponer la demanda ; y que pasando después á la práctica de las pruebas propuestas, comenzando por la de confesión del demandado Don Juan Estapé, reconoció éste bajo juramento como suyos los documentos obrantes á fojas 35, 36, 40, 41 y 42 de estos autos; declarando los testigos Don Rafael Schuck, de treinta y nueve años de edad, comerciante y vecino de Ponce, que no le comprendían las generales de la ley, que era miembro de la casa Vidal y Cª de aquella plaza y había vendido á Don Juan Rocafort, muebles para instalar el café "Suizo" de la Playa, cuyos muebles los había comprado á nombre de Don Juan Estapé, y por cuenta de éste satisfizo su importe Rocafort; Don Gerónimo Anguera, de cuarenta y nueve años, casado, comerciante, vecino de Ponce, á quien tampoco comprenden las generales de la ley, que Don Juan Rocafort le compró un aparato de gas acetileno para el café "Suizo," instalado en la Playa, cuyo aparato se devolvió, por no convenirle ; que dicho aparato lo fué á buscar Rocafort, mandándole cargar su importe á Estapé.   Don Ramón Cortada, comerciante, mayor de edad, del mismo vecindario, á quien no le comprenden tampoco las generales, que el contrato de arrendamiento que obra agregado á estos autos al

folio 43 lo reconoce, puesto que está autorizado con su firma; que Don Juan Rocafort fué donde el declarante como mandatario de Don Juan Estapé para hacer dicho contrato de arrendamiento, el que después de extendido lo llevó Rocafort á Estapé para firmarlo, y después Rocafort le llevó al declarante un ejemplar del mismo. Don Juan Víctor Bertoli, del mismo vecindario, soltero, pintor, mayor de edad, que no le comprenden las generales, que por encargo de Don Juan Rocafort, pintó el café "Suizo" de la Playa y el mismo Rocafort era quien le pagaba semanalmente el precio de su trabajo. Don Juan A. Toro, del mismo vecindario, casado, mayor de edad, apoderado de la casa mercantil de Carlos Armstrong, á quien no le comprenden las generales, que Don Juan Rocafort compraba en la casa de Carlos Armstrong cerveza y otros artículos para el café "Suizo," de la Playa, los cuales se cargaban á la cuenta de la hacienda "Caño Verde," para ser abonados por Don Juan Estapé; que entregaba esos efectos á Rocafort, por orden de Estapé, que era con quien se entendía la casa para el cobro de su importe, y cuyas cuentas eran satisfechas por éste sin impugnación. Dionisio Velilla, del mismo vecindario, casado, ebanista, mayor de edad, sin generales, que los aparadores del café "Suizo" de la Playa, los hizo el declarante ajustados, dirigidos y pagados por Don Juan Rocafort. Don Manuel Nazario, del mismo vecindario, soltero, empleado, mayor de edad, sin generales, que tiene un hijo nombrado Ladislao, que fué dependiente del café "Suizo" de la Playa; y para colocarlo en ese establecimiento se entendió con Don Juan Rocafort, que fué el que lo admitió como tal dependiente. Don Bartolomé Seguí, del mismo vecindario, casado, ebanista, mayor de edad, sin generales, que vendió á Don Juán Rocafort una mesa con mármol para el café "Suizo" de la Playa, y después estuvo Don Juan Estapé con Rocafort en su casa, encargándole le pasara á aquél la cuenta; pero cuando se la pasó no lo encontró en el establecimiento. Don Luis Delgado, de Yauco, mayor de edad, soltero, industrial, sin generales,

que vendió á Don Juan Rocafort para el café "Suizo", de la Playa, y por precio de quinientos pesos, un aparato de soda-water, que fué á cobrar dicha suma á Rocafort, y estaba allí un hijo de Don Juan Estapé, y ambos convinieron en el pago, á cuyo efecto fueron donde Don Juan Estapé, quien le pagó. Don Juan Lacot, mayor de edad, casado, comerciante y vecino de Ponce, sin generales, que celebró con Don Juan Rocafort un contrato de arrendamiento de los altos del edificio que ocupa en la Playa el café "Suizo", y Rocafort firmó el contrato; pero que como había que hacer arreglos y composiciones en el local, Don Juan Estapé aprontó la suma que se necesitó al efecto. Don Carlos Juan, mayor de edad, soltero, dependiente, vecino de Ponce, sin generales, que fué dependiente del café "Suizo", en la Playa, por espacio de un mes, al principio de su fundación. Don Pedro Bestard, mayor de edad, casado, comerciante, de la misma vecindad, sin generales, que Don Juan Rocafort compró al declarante varias latas de conserva para el café "Suizo" de la Playa, cuyos efectos comprados por Rocafort los cargaba á Don Juan Estapé. Don Rafael Torruellas y Cortada, de diez y nueve años de edad, comerciante, soltero, del mismo vecindario y sin generales, que iba mensualmente á cobrar alquiler de la casa en que está establecido el café "Suizo", cuyos recibos presentaba á Don Juan Rocafort, quien ordenaba al cajero, el hijo de Estapé, que los pagase. Don Enrique Falcón, mayor de edad, dependiente, soltero, de la propia vecindad y sin generales, que fué dependiente del café "Suizo" en la Playa, para cuya colocación habló con Don Gerardo Millet y lo admitieron Estapé, Rocafort y el Millet; que era el dependiente del restaurant de dicho establecimiento, y puéstole de manifiesto las listas de fojas 80 y 81, manifestó, que la primera era escrita por Don Pedro Estapé, y la segunda por el Rocafort y el dicente; y que esta afirmación que obedece á que conoce las letras de Estapé y Rocafort, habiendo declarado además Don Manuel Rojas, soltero, dependiente, ante el Juez Municipal de Cate-

dral de esta ciudad de San Juan, que la persona que hizo el encargo de las listas litografiadas para el café "Suizo" de Ponce, lo fué Don Juan Estapé, por conducto de su principal Don Juan Tejeiro; y Don Enrique Franco y Rey, mayor de edad, casado, comerciante y vecino de la ciudad de Mayagüez, que reconoce como legítimos y auténticos los documentos de fojas 100, 101, 102, 103, 104 y 105, los cuales fueron expedidos en las fechas que cada uno tiene, por la casa comercial que gira en aquella plaza bajo la razón de E. Franco y Cª, de la cual es gerente el declarante.—Resultando: De la prueba del demandado Don Juan Estapé, que se trajo y agregó á los autos, á fojas 49 y 61, el inventario general de las existencias, muebles y demás activo y pasivo del café restaurant el "Suizo", practicado en siete de Junio de mil novecientos, y un borrador en lápiz del mismo inventario; y que en el acto del juicio oral declaró bajo juramento Don Juan Rocafort que reconoce el borrador del balance marcado 2 y obrante de foja 63 á la 68, pues son hechos por el declarante; que no intervino en el balance de foja 52 á la 62, ni lo presenció; que el contrato de sociedad que celebró con Estapé, tuvo lugar cuando empezó á prepararse el establecimiento del café-restaurant; que compró el aparato de soda, que se pagó con dinero de Don Juan Estapé, y el pago lo hizo Don Pedro Estapé, por orden del declarante; que los gastos de arreglo de establecimiento y efectos para instalarlo se hicieron con dinero del mismo Estapé; que el declarante no aportó capital alguno en esa sociedad, pero entró en ella como socio industrial, que no puede precisar la cantidad con que empezó el establecimiento ni la que había cuando se salió de él el declarante; que varias veces tomó dinero en el establecimiento sin devolverlo; que al fundarse aquél llevó á vivir á él á su esposa é hijos, con anuencia de Estapé, según convenio; que los demás socios no tenían allí familia; que Don Valerio Gentili estuvo hospedado en el establecimiento algún tiempo, no recuerda cuánto, y no sabe cuánto se

le cobraba por su estancia allí; que supone que en el café hubo ganancias, por el negocio que en él se hacía; que se salió del establecimiento en virtud de una carta que le escribió Estapé, despidiéndole, carta que acompañó con sus pruebas, y que se marchó de la casa sin decírselo á Estapé; declarando además los testigos Don Jaime Russinjol, soltero, dependiente, mayor de edad, vecino de Ponce, sin generales, que estuvo colocado en el café "Suizo" de la Playa cuando estaba en él Don Juan Rocafort; que la firma suya puesta en el balance marcado 1º es de su puño y letra; que ese balance lo puso en limpio el declarante, con el otro dependiente, Don Enrique Falcón, con los datos que les entregó el Sr. Rocafort; pero ignora si éste lo examinó luego de estar en limpio; que los datos que le suministraba Rocafort para el balance, eran de puño y letra de éste, y puéstole de manifiesto el borrador obrante de fojas 63 á 70, reconoció como de Rocafort los de fojas 63 á la 68, pero no los de fojas 69 y 70, cuya letra dice no conoce ni sabe quien los escribió; que el declarante puso en limpio en el balance las notas de Rocafort, pero continuó el trabajo el dependiente Falcón y el tenedor de libros. Don Ladislao Nazario, mayor de edad, soltero, dependiente y vecino de la misma Ciudad, sin generales, que reconoce la firma suya puesta en el balance marcado 1º; que era dependiente del "Suizo," cuando estaba en él Rocafort; que éste empezó el balance, que ha reconocido, pero no lo concluyó, pues vinieron á continuarlo al pueblo, cree que por un tal Escribano, pero que no sabe quienes lo trajeron al pueblo.— Resultando: Que terminadas las pruebas y oídos los abogados defensores de las partes, con citación de los mismos, se señaló día para la votación, la que tuvo lugar el día señalado, dictando sentencia el Tribunal de Distrito de Ponce, por mayoría de votos, en veinte y nueve de Marzo último, declarando sin lugar la excepción perentoria de cosa juzgada, y con lugar la demanda, y en su consecuencia resuelto el contrato de sociedad para la explotación del café restaurant

"El Suizo," entre Don Juan Estapé y Don Juan Rocafort, condenando al primero á indemnizar al segundo, los daños y perjuicios que le ha causado por dicha resolución, en cantidad superior á cuatrocientos dollars, que se fijará en la forma que determinan el artículo 927 y sus concordantes, de la Ley de Enjuiciamiento Civil, condenándolo asimismo á satisfacer la cantidad de tres dollars por cada uno de los testigos del actor, que asistieron para la celebración del juicio, suspendido en catorce de Febrero del año en curso, y cinco por el perito calígrafo, así como también en otros tres dollars por cada testigo de los que declararon al celebrarse el acto oral, y en todas las costas del litigio.—Resultando: Que contra esta sentencia interpuso la representación de Don Juan Estapé recurso de casación por infracción de ley y de doctrina, que le fué admitido, fundándolo en los números 1º, 3º y 7º del artículo 1,690 de la Ley de Enjuiciamiento Civil, y alegando como motivos del recurso:—1º Que el Tribunal sentenciador había cometido error de derecho en la apreciación de las pruebas, con infracción del artículo 1,232 del Código Civil; de la doctrina sentada por este Tribunal Supremo en su sentencia de diez de Mayo de mil novecientos, en la que de conformidad con las del Tribunal Supremo de España de treinta y uno de Diciembre de mil ochocientos ochenta y tres, veinte y cinco de Febrero de mil ochocientos ochenta y cuatro, veinte y ocho de Octubre de mil ochocientos ochenta y cinco y veinte y ocho de Diciembre de mil ochocientos noventa y uno, quedó consagrado el principio de que "las pruebas deben apreciarse en conjunto sin que sea lícito descomponerlas ni separarlas," y de los artículos 1,225 y 1,248 del Código Civil, en relacion éste con el 17, 51, 52 y 119 del Código de Comercio; que las listas de comidas litografiadas de fojas 77, 78 y 79, que no han sido reconocidas más que por el testigo Enrique Falcón, único que dice al folio 189 vuelto, que fueron empleadas en el café "Suizo," la minuta de contrato de foja 35, la tarjeta de foja 38, las cartas de fojas 39 y 40, reconocidas estas últimas por el

Sr. Estapé, en su confesión, al folio 183, las cédulas de notificación de folios 43 y 44, el contrato de arrendamiento de folio 41, los testigos que declararon en el acto del juicio oral, y todas las demás pruebas, practicadas á instancia del actor, y que se relacionan en el resultando quinto de la sentencia recurrida, apreciadas como deben serlo en conjunto, según la doctrina invocada, no demuestran como se dice en los considerandos 1º y 2º, la existencia del contrato de sociedad que en la demanda se amerita, ni mucho menos que en virtud de esa supuesta convención, tuviese don Juan Rocafort el carácter de administrador; que de esas pruebas se desprende tan sólo, porque no otro alcance se le puede dar á los documentos privados reconocidos en confesión por el Sr. Estapé, según los artículos 1,232 y 1,225 del Código Civil, sino lo que ellos dicen, que el Sr. Estapé puso al frente del establecimiento á su hijo Don Pedro y á Don Juan Rocafort para que se ganasen la vida, como dice el Sr. Rosich en la carta del folio 40, y que luego pensó asociarlos, quedándose esto último en proyecto; que eso se deduce del contenido del documento privado, sin firmas, obrante al folio 35, en el que se consigna un proyecto que fué enviado á Don Juan Rocafort, y por eso se encontraba en poder de éste, para explorar la voluntad de Don Pedro Estapé y Don Gerardo Millet, atestiguándose esto último con la carta del folio 36, en la que el Sr. Estapé pregunta al Sr. Rocafort si había puesto al corriente á los dos jóvenes de lo escrito, refiriéndose sin duda al proyecto de contrato del folio 35; que si como se dice en el 1er considerando de la sentencia, la pretendida sociedad quedó constituída con arreglo al borrador del folio 35, no se explica cómo, no teniendo todos los socios, según ese borrador, el uso de la firma social, se verificaban por el Sr. Estapé personalmente ó en su nombre, la mayor parte de los contratos relacionados con la supuesta sociedad, cargándose á aquél, y no á ésta, las compras hechas á plazos, como así se ve en toda la prueba del actor; que además en el primer punto de la demanda, se dice, que fué mercantil

la sociedad litigiosa, y no es posible admitir con sólo las pruebas que se han practicado, tal constitución; que nada importa el que algunos testigos declaren que el Sr. Rocafort hizo algunos encargos á unos y compras á otros, pagando siempre el Sr. Estapé, porque aquél ha podido hacerlo y en realidad lo ha hecho, como mandatario de éste, y porque aun cuando de modo èxplícito y acorde todos esos testigos hubieran manifestado que les constaba la existencia de la sociedad, había que estar siempre en la apreciación de esas pruebas, á lo que prescribe el artículo 1,248 del Código Civil, en relación con el 17, 51, 52 y 119 del Código de Comercio, que han sido infringidos por la sala sentenciadora.—2º Que ese error de derecho en la apreciación de las pruebas ha dado margen á la infracción del principio *actore non probante, reus est absolvendus*, proclamado como doctrina por la sentencia de este Tribunal Supremo de dos de Marzo de mil novecientos, concordante con las del Tribunal Supremo de España de veinte y uno de Enero de mil ochocientos sesenta y siete, veinte y dos de Enero de mil ochocientos sesenta y nueve, siete de Marzo de mil óchocientos setenta y cuatro, y veinte y uno de Diciembre de mil ochocientos ochenta y dos; por cuanto no habiéndose probado, en la forma que el Código de Comercio determina en sus artículos 17, 51, 52 y 119, la existencia del contrato de sociedad mercantil en que la demanda se funda, ha debido ser absuelto de la misma el señor Estapé.—3º La del párrafo último del artículo 52, en relación con el 50, 51, 119 y 17 del Código de Comercio, toda vez que se ha estimado como fuente de obligaciones y de acción para reclamarlas, un supuesto contrato de sociedad mercantil que no se ha consignado en documento público, ni se ha inscrito en el Registro Mercantil, y que no puede por falta de tales requisitos producir aquellos efectos.— 4º La de los artículos 116 y 117 del Código de Comercio, porque aunque se hubiese constituído la sociedad de que se trata, y aunque se hubiese consignado su constitución en documento público é inscrito éste en el Registro Mercantil no

podría producir efecto, toda vez que uno de los socios aparece aportando un capital, para no obtener lucro alguno.—5º La del artículo 131 del Código de Comercio, por aplicación indebida, toda vez que ese precepto sólo es aplicable á las sociedades mercantiles colectivas, y en autos no se trata de una entidad jurídica de esa naturaleza.— 6º La del principio que dice: "no puede ser nadie demandado, sino por obligación que aparezca plenamente haber contraído", cuyo principio proclaman como doctrina varias sentencias del Tribunal Supremo de España, y entre ellas la de once de Octubre de mil ochocientos ochenta y tres, puesto que se ha declarado con lugar una demanda que se funda en una convención cuya realidad jurídica no se ha comprobado en la forma que exige el Código de Comercio.— 7º La del principio que dice ser ilegal el decidir un punto que afecta á derechos de alguien, sin oirlo ni vencerlo en el juicio en que la decisión se dicte, y la del que proclama que la disolución de un contrato, el adicionarlo y variarlo sustancialmente, exige la concurrencia y consentimiento de todos los que lo celebraron, infringiendo esa doctrina la sentencia que lo altera, modifica ó disuelve, si en el litigio no han intervenido todos los contratantes; cuyos principios los sientan como doctrina, las sentencias del Tribunal Supremo de España de treinta de Junio de mil ochocientos setenta y cuatro, veinte y seis de Febrero de mil ochocientos setenta y cinco, veinte y tres de Noviembre de mil ochocientos ochenta y dos, veinte y ocho de Febrero de mil ochocientos ochenta y cuatro, y cuatro de Enero de mil ochocientos noventa y tres, toda vez que habiéndose hecho el contrato de sociedad de que se trata, según la sentencia recurrida, entre Don Juan Estapé, su hijo Don Pedro y Don Juan Rocafort, se ha resuelto dicho contrato sin haber sido demandado, ni oído, ni vencido en el juicio, Don Pedro Estapé.—8º La de los principios que dicen que los autos y sentencias consentidas adquieren la fuerza de la cosa juzgada, que es inmutable, y pone fin al pleito, siempre que en los casos

que se aleguen exista identidad de personas, cosas y acciones, sentado como doctrina por las sentencias del Tribunal Supremo de España de diez de Diciembre de mil ochocientos setenta y tres, veinte y siete de Octubre de mil ochocientos setenta y cuatro, veinte y tres de Diciembre de mil ochocientos ochenta y dos, veinte y ocho de Febrero de mil ochocientos ochenta y cuatro, veinte y cinco de Noviembre de mil ochocientos ochenta y seis, cuatro de Enero de mil ochocientos noventa y tres, treinta de Junio de mil ochocientos setenta y cuatro y veinte y seis de Febrero de mil ochocientos setenta y cinco, toda vez que habiéndose promovido por el Sr. Rocafort un pleito contra las propias personas demandando lo mismo y ejercitando idéntica acción que en estos autos, desistió de aquél después de contestada la demanda, y de establecido el quasi-contrato de la litis-contestación, y se le tuvo por desistido á su perjuicio y con las costas, á pesar de lo que se ha admitido y declarado con lugar la idéntica demanda últimamente producida, desestimándose aquella excepción por el Sr. Estapé alegada.—9º y último.   La del principio que dice : "no ser válido, por incongruente, el fallo en que se da más de lo pedido," consagrado como doctrina por las sentencias del Tribunal Supremo de España de once de Octubre de mil ochocientos cincuenta y siete, veinte y ocho de Enero de mil ochocientos sesenta y nueve y quince de Octubre de mil ochocientos ochenta, ya que pidiéndose en la súplica de la demanda que se condene al Sr. Estapé á indemnizar daños y perjuicios, sin determinar cantidad, pudiendo por tanto ser ésta mayor ó menor que cuatrocientos dollars, se condena en la sentencia á pagar mayor cantidad que esa suma.—Resultando:   Que sustanciado el recurso en este Tribunal Supremo, con intervención de ambas partes se señaló día para la vista del mismo, á cuyo acto asistió sólo el abogado defensor del recurrente.— Visto:   Siendo Ponente el Presidente del Tribunal Don José S. Quiñones.—Considerando:  En cuanto al primer motivo del recurso, que la apreciación de las pruebas es de

la exclusiva competencia de la sala sentenciadora, y que esa apreciación debe prevalecer mientras no se demuestre que al hacerla hubiere incurrido en algún error de derecho, infringiendo alguna ley relativa al valor de las pruebas, ó en error de hecho, si éste último resulta de algún acto ó documento auténtico que demuestre la equivocación evidente del juzgador, como lo prescribe el párrafo séptimo del artículo 1,690 de la Ley de Enjuiciamiento Civil vigente.—Considerando: Que si bien contra la apreciación hecha de las pruebas por el Tribunal sentenciador, al declarar comprobada la existencia del contrato de sociedad que ha servido de base á la demanda de Don Juan Rocafort, se citan como infringidos los artículos 1,232, 1,225 y 1,248 del Código Civil, y la doctrina legal que se dice sancionada por este Tribunal Supremo, de que "las pruebas deben apreciarse en conjunto, sin que sea lícito descomponerlas ni separarlas," no son de apreciarse las infracciones que se alegan, tanto porque al fundarse el Tribunal de Ponce para hacer aquella declaratoria en el valor de los documentos privados de fojas 35, 36, 38 y 40, que han sido reconocidos bajo juramento por el demandado Don Juan Estapé, como ciertos y legítimos, así como en el testimonio de los testigos que han declarado en el juicio, no ha desconocido, antes al contrario, se ha ajustado estrictamente á los preceptos de los referidos artículos interpretando los documentos que se citan en el sentido que se desprende de su contexto literal, enlazándolos entre sí, y con el mérito resultante de las declaraciones de los testigos, apreciadas con un criterio racional y lógico, para concluir dando por probada la existencia del contrato de sociedad sobre que se funda la demanda; cuanto porque, al apreciar las pruebas en la forma en que lo ha verificado el Tribunal del Distrito de Ponce, no ha cometido infracción legal alguna, y mucho menos la de la doctrina que se cita, que por otra parte no es tal doctrina jurídica, pues lo que la jurisprudencia constante de este Tribunal Supremo tiene establecido y sancionado es que cuando las pruebas se

aprecian en conjunto por la Sala sentenciadora, en uso de su competencia, como lo ha verificado en el presente caso, no cabe impugnar en casación aislada y separadamente ninguno de los elementos que la constituyen, concepto completamente distinto del que se sustenta por el recurrente en el primer motivo del recurso. — Considerando: Que tampoco son de admitirse á este respecto las infracciones, de los artículos 17, 51, 52 y 119 del Código de Comercio, que se alegan en los motivos 2 y 3 del recurso, ni de la doctrina que se cita en el 6º motivo; porque si bien con arreglo al último de dichos artículos, toda compañía de comercio antes de dar principio á sus operaciones, deberá hacer constar su constitución, pactos y condiciones, en escritura pública, que se presentará para su inscripción en el Registro mercantil, conforme á lo dispuesto en el artículo 17 del mismo Código, este precepto debe entenderse en relación con lo establecido en el artículo anterior, ó sea para que el contrato de sociedad pueda surtir efecto en perjuicio de tercero, pero no entre los socios, respecto de los cuales, será válido y obligatorio, siempre que aparezca celebrado con los requisitos esenciales del derecho, cualesquiera que sean las formas, condiciones y combinaciones lícitas y honestas con que lo constituyan, siempre que no estén expresamente prohibidas en el Código de Comercio, como lo establece terminantemente el artículo 117 del mismo cuerpo legal.—Considerando: Que si bien el pacto que excluye á uno de los socios de toda participación en las ganancias, es opuesto y contrario al objeto del contrato de sociedad, que es el interés común de los socios, no habiendo precepto alguno en el Código de Comercio que expresamente declare nulo en absoluto el contrato de sociedad que contenga el pacto expresado, es de aplicarse al caso como derecho supletorio, según lo establece el artículo 50 del mismo Código de Comercio, el artículo 1,691 del Código Civil, que limita los efectos de la nulidad al pacto exclusivamente, sin extenderlo al contrato de sociedad; y

por consiguiente, al desestimar el Tribunal sentenciador la excepción de nulidad opuesta por el demandado, hoy recurrente, á la sociedad de que se trata, no ha infringido tampoco los artículos 116 y 117 del Código de Comercio, que como infringidos se citan en el 4? motivo del recurso.—Considerando: Que tanto en las sociedades en comandita, como en las regulares colectivas, tienen igual derecho los socios gestores para ser mantenidos en la administración de los intereses sociales, mientras no den motivo justificado para ser destituídos, y por consiguiente que, aun en el supuesto no comprobado, de que la sociedad establecida entre Rocafort y Estapé fuera en comandita, porque no es bastante para atribuirle este carácter la circunstancia de ser el Estapé único socio capitalista, mientras que por pacto expreso de la sociedad no se hubiera limitado su responsabilidad á las resultas de las operaciones sociales al capital aportado, al reconocer el Tribunal sentenciador á favor del demandante el derecho que como tal administrador le correspondía para ser respetado en la administración de la sociedad, no ha infringido tampoco por aplicación indebida, como se establece en el 5? motivo del recurso, el artículo 131 del Código de Comercio.—Considerando: Que en los recursos de casación por infracción de ley no pueden resolverse otras cuestiones que las que hayan sido propuestas y discutidas oportunamente en el pleito; y que no habiéndolo sido la planteada por el recurrente en el 7? motivo del recurso, relativa á la intervención que dice debió haber tenido en el pleito el otro socio Don Pedro Estapé, no procede discutirse ni dictarse sobre ese particular resolución alguna.—Considerando: En cuanto á la excepción de cosa juzgada á que se refiere el 8? motivo del recurso, que si bien entre el pleito anteriormente establecido por Don Juan Rocafort contra Don Juan Estapé y Garriga, del que desistió después de contestada la demanda, y el que ha establecido posteriormente, y el que ha dado lugar al presente recurso, hay una completa identidad de personas, cosas y acciones,

que son los requisitos necesarios para que aquella excepción sea procedente, es evidente que en el primero de dichos pleitos no llegó á dictarse resolución alguna sobre el fondo de la demanda, y que si bien el demandante Don Juan Rocafort desistió de su prosecución después de presentado el escrito de contestación del demandado, y que se le tuvo por desistido á su perjuicio y con las costas, este desistimiento fué condicional, y á reserva de entablar de nuevo la demanda, reserva que le admitió el Tribunal, en el mero hecho de haber dispuesto que se le entregasen los autos con aquel objeto, por providencia notificada y consentida por las partes, de donde se deduce que al referido desistimiento no pueden atribuírsele los efectos de la cosa juzgada, que requiere una sentencia firme, que haya terminado el pleito definitivamente, ó en otro caso un desistimiento incondicional y absoluto de la acción deducida, aprobado por auto ó resolución judicial igualmente firme y ejecutoriada.—Considerando: Que habiéndose solicitado en la demanda por Don Juan Rocafort que se declarase resuelta la sociedad establecida entre él y Don Juan Estapé, y que se condenase á éste á que le indemnizara los daños y perjuicios y le abonara los intereses respectivos por la resolución del referido contrato, que se estimaban en cantidad superior á cuatrocientos dollars, á los efectos de la competencia, la sentencia que, declarando con lugar la demanda, condena á Estapé á indemnizar al demandante Don Juan Rocafort los daños y perjuicios que le ha causado por la resolución de dicho contrato de sociedad, en cantidad superior á aquella cantidad, que se fijará en la forma. que determinan el artículo 927 y sus concordantes de la Ley de Enjuiciamiento Civil, guarda congruencia con la demanda, y no infringe en el concepto que se expresa el principio que se cita en el 9º y último motivo del recurso.—Fallamos: Que debemos declarar y declaramos no haber lugar al recurso de casación por infracción de ley interpuesto por la representación de Don Juan Estapé y Garriga, contra la sentencia pronunciada por

el Tribunal del Distrito de Ponce, con las costas á cargo del recurrente, y líbrese certificación correspondiente á la Corte de Distrito de Ponce, con devolución de los autos que ha remitido.—Así por esta nuestra sentencia, que se publicará en la *Gaceta Oficial,* lo pronunciamos, mandamos y firmamos.

José S. Quiñones.—José C. Hernández.—José Mª Figueras. —J. H. McLeary.

Publicación.—Leída y publicada fué la anterior sentencia por el Sr. Presidente del Tribunal Supremo Don José S. Quiñones, celebrando audiencia pública dicho Tribunal en el día de hoy, de que certifico como Secretario en Puerto Rico, á dos de Diciembre de mil novecientos uno.—E. de J. López Gaztambide, *Secretario.*